DAVIS *et ux. v.* UNION PLANTERS NAT. BANK & TRUST CO.
*et al.*

(*Nashville,* December Term, 1936.)

Opinion filed March 27, 1937.

EDGAR WEBSTER and D. H. HUDSON, both of Memphis, for appellants.

CANALE, GLANKLER, LOCH & LITTLE and METCALF, METCALF & APPERSON, all of Memphis, for appellees.

MR. JUSTICE McKINNEY delivered the opinion of the Court.

The question before us is whether a certain note is negotiable. If not, the assignee thereof takes it subject to all equities and defenses available between the original parties. 8 C. J., 52.

On March 2, 1932, Davis and wife executed their promissory note to the Turley Mortgage Company, Incorporated, a mortgage broker, of Memphis, for $4,000, pay-

able in installments over a period of years, with interest payable semiannually at the rate of 6 per cent per annum, and secured same by executing a deed of trust on their home in Memphis.

It was contemplated by the parties that the New York Life Insurance Company would purchase this note since its inspector had agreed to recommend it. But on March 26, 1932, the insurance company wrote the Turley Mortgage Company that it did not wish to purchase this paper.

On March 5, 1932, the Turley Mortgage Company borrowed $4,000 from the defendant bank, for which its note was executed with the Davis note attached as collateral. Davis knew nothing about this, and was told from time to time by the mortgage company that the matter was still being considered by the insurance company.

On July 14, 1932, T. J. Turley, president of the Turley Mortgage Company, died, and it developed that the company was wholly insolvent. Upon learning of this situation, and never having received any sum for their note, complainants filed the bill herein enjoining the bank from having the deed of trust securing said note foreclosed.

The chancellor dismissed the bill without assigning any reasons therefor. The Court of Appeals affirmed the decree of the chancellor, being of the opinion that the note was negotiable and that the bank was a holder in due course. *Certiorari* has heretofore been granted and argument heard.

Complainants insist that the following provision in the note destroys its negotiability:

"Upon breach of any promise made in this note or in the deed of trust securing it, at the option of the holder

the entire indebtedness hereby evidenced shall become due then or thereafter as the holder may elect regardless of the date of maturity. Notice of the exercise of such option is hereby expressly waived.''

Section 7325 of the Code defines a negotiable instrument, providing, among other things, that the sum to be paid and the time of payment must be certain and unconditional.

As stated by the Court of Appeals of New York, in *Enoch* v. *Brandon,* 249 N. Y., 263, 267, 164 N. E., 45, 47: ''The statute deals with the form of the instrument—with what a mere inspection of its face should disclose. It must contain an unconditional promise to pay a fixed sum on demand, or at a fixed or determinable future time, to order or to bearer. Only if it fulfills these requirements is it negotiable. If it does, no collateral agreement affects its character.''

And in *Paepcke* v. *Paine,* 253 Mich., 636, 235 N. W., 871, 873, 75 A. L. R., 1205, 1209, the court said:

''Negotiable paper is frequently used as a substitute for money, and the essential elements of negotiability are the certainty in the sum to be paid and in the time of payment. If the instrument on its face contains language creating uncertainty in either of these respects, it fails to meet the statutory requirements.''

The weight of authority, as well as the better-reasoned cases, hold that the form of the note determines its negotiability. The note alone must be looked to in considering its negotiability. The annotator of 75 A. L. R., p. 1211, upon this question says:

''The weight of authority supports the doctrine of the reported case (*Paepcke* v. *Paine*) that, notwithstanding the rule that two or more instruments executed by

the same parties at the same time and referring to each other must be construed together, the form of a note or bond may alone be considered in determining its negotiability, although it is secured by a mortgage or trust agreement, and that, unless the terms of the latter are referred to in a way to incorporate their provisions into the note or bond, the mortgage or trust agreement is but an incident thereto and is to be regarded as a security only, the provisions of which will not render the bond or note non-negotiable if it is otherwise a negotiable instrument.''

The reason for the rule is thus stated by the court in *Paepcke* v. *Paine, supra:*

''Much of the difficulty in decision is due to the application of the rule that two or more instruments, executed by the same parties at the same time and referring to each other, must be read together as constituting but a single contract between the parties. But a note and a mortgage securing its payment do not constitute a single contract. They are separate instruments, executed for different purposes and not of the same nature. The note, if it be negotiable in form, is governed by the law applicable to negotiable instruments, and the mortgage by the law of real property. The holder of such a note may abandon his security, and seek to enforce payment of it according to its terms as written. The question of its negotiability will be determined by the law relating thereto. If they be construed together as but one instrument, the note loses its character as such, and recovery must be had upon the contract as evidenced by both instruments. What has been said relative to a note and mortgage applies with equal force to a bond, negotiable in form, and the trust agreement securing its payment.

"The better rule, as we view it, is that announced in the New York and Illinois cases above referred to and the cases cited in support thereof. The form of the note or bond may alone be considered in determining its negotiability."

Other cases to the same effect are *Enoch* v. *Brandon, supra; Old Colony Trust Co.* v. *Stumpel,* 247 N. Y., 538, 161 N. E., 173; *National Bond & Inv. Co.* v. *Lanners,* 253 Ill. App., 262; *Merchants' National Bank* v. *Detroit Trust Co.,* 258 Mich., 526, 242 N. W., 739, 85 A. L. R., 350; *Mechanics' Bank* v. *Johnson,* 104 Conn., 696, 134 A., 231; *Thorp* v. *Mindeman,* 123 Wis., 149, 101 N. W., 417, 418, 68 L. R. A., 146, 107 Am. St. Rep., 1003; *Farmers' Nat. Bank* v. *McCall,* 25 Okla., 600, 106 P., 866, 26 L. R. A. (N. S.), 217; *Moore & Co.* v. *Burling,* 93 Wash., 217, 160 P., 420.

By section 7326 of the Code the negotiability of a note is not destroyed by the fact that it is payable in installments, with a provision that, upon default in payment of any installment or of interest, the whole shall become due.

A review of the numerous cases to which we have been referred satisfies us that the text found in 3 R. C. L., 909, 910, is supported by the weight of authority, as well as upon reason, and is as follows:

"The fact that the date of payment may be accelerated by the default of the debtor in failing to comply with specified conditions does not affect the negotiability of the paper. Accordingly, a note secured by a real estate mortgage is negotiable, although it provides that on default in the payment of interest, or failure to comply with any conditions of the mortgage, the whole principal shall, at the option of the mortgagee, become due and payable.

This conclusion has been reached under the Negotiable Instruments Law, which declares in effect that the negotiability of an instrument shall not be affected by a 'provision that upon default in payment of any installment or interest the whole shall become due.' "

We will refer briefly to some of the cases holding that a reference in the note to an acceleration clause in the mortgage does not destroy the negotiability of the note.

"The principal of this bond may be declared or become due and payable on the conditions, in the manner, and with the effect set forth in the said . . . mortgage, if certain defaults specified therein shall occur." *Bank of California* v. *National City Co.*, 138 Wash., 517, 244 P., 690, 693.

"This bond . . . is entitled to the benefits and subject to the provisions of a mortgage or deed of trust dated January 3, 1910, made by the obligor company to City Trust Company, as trustee. . . . The obligor company is required to create a sinking fund, . . . and the principal of said bonds may become due in case of default or sale under said mortgage or deed of trust, all as provided in said mortgage or deed of trust, to which reference is made for a complete statement." *Sturgis Nat. Bank* v. *Harris Trust & Savings Bank,* 351 Ill., 465, 184 N. E., 589, 591.

"The payment of this note is secured by a mortgage of even date herewith on real estate. If default shall be made in the payment of interest, or in case of failure to comply with any of the conditions or agreements of the mortgage collateral hereto, then the whole amount of the principal shall at the option of the mortgagee, or his representatives or assigns (notice of such option being hereby expressly waived), become due and payable

without any notice whatever." *Thorp* v. *Mindeman, supra.*

"In case any default shall occur as set forth in the said Trust Agreement, the principal of all the Debentures issued and outstanding thereunder may be declared, and shall thereupon become, due and payable before maturity in the manner and with the effect therein provided." *Paepcke* v. *Paine, supra.*

"to which deed of trust reference is hereby made with the same effect as though recited at length herein, for the description of the property mortgaged, the nature and extent of the security, the rights of the holders of the bonds, and the terms and conditions upon which the said bonds are issued, held and secured, and may, before their fixed maturities, be declared at once due and payable, and the manner of prepayment before maturity." *Marine Nat. Exch. Bank* v. *Kalt-Zimmers, Mfg. Co.,* 293 U. S., 357, 55 S. Ct., 226, 227, 79 L. Ed., 427.

The Court of Appeals of New York, in *Enoch* v. *Brandon, supra,* made this statement in passing upon the negotiability of the involved bonds:

"Some minor matters are also to be considered. There is the possibility of the acceleration of the date when the bonds are due, if there is default under the mortgage. Such a possibility does not make them non-negotiable."

Our own case of *West Point Banking Co.* v. *Gaunt,* 150 Tenn., 74, 262 S. W., 38, 40, 34 A. L. R., 862, involved the negotiability of notes providing that, in the event the maker should fail or refuse to deposit with the holder thereof such additional security as the holder might from time to time require, should the security pledged become unsatisfactory or less valuable, and in default thereof,

said notes should become due and payable. In passing upon their negotiability, the court said:

"In *Ernst* v. *Steckman*, 74 Pa., 13, 15 Am. Rep., 542, a note payable 'twelve months after date' (or before, if made out of the sale of W. S. Coffman's Improved Broadcast Seeding Machine), was held to be negotiable. In concluding the opinion the court there said:

" 'The principle to be deduced from the authorities is this. To constitute a negotiable promissory note, the time, or the event, for its ultimate payment, must be fixed and certain; yet it may be made subject to contingencies, upon the happening of which, prior to the time of its absolute payment, it shall become due. The contingency depends upon some act done or omitted to be done by the maker, or upon the occurrence of some event indicated in the note; and not upon any act of the payee or holder, whereby the note may become due at an earlier day.'

"The acceleration of the date of maturity of the notes involved in the instant cause did not depend wholly upon the whim or caprice of the holder, but depended upon the omission or failure of the maker to furnish additional security when demanded. Therefore it cannot be held that the notes were nonnegotiable. We think they are negotiable instruments under the better reasoned cases and according to the best authority."

In *Nickell* v. *Bradshaw*, 94 Or., 580, 183 P., 12, 17, 11 A. L. R., 623, 632, 633, it is said: "Stated broadly, the overwhelming weight of authority is to the effect that, where a note is made payable on a definite day and also contains a conditional promise to pay at an earlier time, the instrument is not rendered nonnegotiable by the acceleration clause."

The holder can ignore the acceleration clause if he so desires, because it does not affect the note if it is otherwise negotiable. And the holder of the note, by virtue of the statute, can only mature it before its due date upon the breach of some provision by the maker.

From the foregoing authorities the principle is deducible that, if a note contains an unconditional promise to pay a fixed sum at a certain or determinable future time to order or bearer, it is negotiable; and under section 7326 of the Code the inclusion of an acceleration clause, for some breach by the maker, does not affect its negotiability. Applying this test to the note in question, we conclude that it is a negotiable instrument.

In *White* v. *Hatcher,* 135 Tenn., 609, 188 S. W., 61, it was held that an acceleration clause in a note did not render it nonnegotiable. In the present cause we go a step further and hold that a provision in a note for accelerating payment for breach of promise in a deed of trust securing it does not make the note nonnegotiable. The principle is the same in both cases, viz., that such an agreement does not make the time of payment uncertain or indefinite within the meaning of the Negotiable Instruments Laws.

Counsel for complainants have referred us to a number of cases supporting the well-recognized rule clearly and succinctly stated in 3 R. C. L., 883, 884, as follows:

"It may be stated as the general rule that wherever a bill of exchange or promissory note contains a reference to some extrinsic contract, as distinguished from a reference importing merely that the extrinsic agreement was the origin of the transaction, or constitutes

the consideration of the bill or note, the negotiability of the paper is destroyed.''

There is considerable conflict in the authorities as to whether the presence of words in a note ''as per contract of even date herewith'' would be sufficient to render the paper nonnegotiable. That question was reserved in *Hight* v. *McCulloch*, 150 Tenn., 117, 263 S. W., 794.

As illustrative of the foregoing text, in *American Exchange Bank* v. *Blanchard*, 7 Allen (Mass.), 333, it was held that the note was nonnegotiable because it was payable ''subject to the policy.''

In *Chicago, etc., Bank* v. *Chicago, etc., Co.*, 190 Ill., 404, 60 N. E., 586, 587, 83 Am. St. Rep., 138, there was a promise to pay ''according to the requirements of an agreement of even date herewith.''

In *Old Colony Trust Co.* v. *Stumpel, supra,* the Court of Appeals of New York was concerned with a note containing this provision: ''The within note is subject to the terms of a conditional sales agreement executed by the maker thereof upon this date.''

The Court of Appeals of New York, in *Enoch* v. *Brandon, supra,* makes this very clear statement of the rule invoked by complainants: ''If in the bond or note anything appears requiring reference to another document to determine whether in fact the unconditional promise to pay a fixed sum at a future date is modified or subject to some contingency, then the promise is no longer unconditional. What that document may provide is immaterial. Reference to the paper itself said to be negotiable determines its character.''

The note in question contains no such reference and does not provide that it is subject to the deed of trust. The holder is at liberty to examine the deed of trust to

see what promise, if breached, would authorize him to accelerate the maturity of the note. Or he can ignore the acceleration clause and defer action until the due date of the note.

In 9 C. J., 49, it is said: "But where a bond contains special stipulations and its payment is subject to contingencies not within the control of the holder, it is deprived of the character of a negotiable instrument and becomes exposed to any defense existing thereto, as between the original parties to the instrument."

The payment of the note in controversy is subject to no contingencies not within the control of the maker, which distinguishes this cause from those cited by complainants. There is no uncertainty as to the amount or the time of payment; hence it is unnecessary to refer to any other instrument to ascertain these facts.

Counsel for complainants makes the further contention that the bank is not a holder in due course. We find ample evidence to support the concurrent finding of the jury, the chancellor, and the Court of Appeals to the contrary.

The bill was amended so as to make the New York Life Insurance Company a party defendant, and the court is asked to hold it liable for the default of the Turley Mortgage Company upon the theory that the latter was its agent. With respect to this issue the jury was unable to agree. The chancellor, being of the opinion that there was no evidence to establish agency, granted the motion of the New York Life Insurance Company for a new trial and sustained its renewed motion for a directed verdict which it had made at the conclusion of the evidence. Upon this question we have carefully considered the evidence and concur with the other

courts in holding that there is no substantial evidence from which such agency may be inferred. The belief of Davis that such relationship existed is not legal evidence of the fact. As to this matter it is unnecessary to detail the facts, since in the companion case of *Willie Maie Conaway* v. *New York Life Insurance Company et al.*, 171 Tenn., 290, 102 S. W. (2d), 66, decided at Nashville on February 27, 1937, this question was fully considered, and the conclusion reached that with respect to negotiating loans Turley Mortgage Company was the agent of the borrower and not of the New York Life Insurance Company.

This is a cause where one of two innocent parties must suffer, and the loss will have to be borne by complainants, due to their misplaced confidence in Mr. Turley.

For the reasons stated herein, the decree of the Court of Appeals will be affirmed.